935 F.2d 269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marvin BEMIS, Plaintiff-Appellee/Cross-Appellant,
v.
John HOGUE, as Plan Administrator of the Franklin Electric
Profit-Sharing Plan, Defendant-Appellant/Cross-Appellee,
Franklin Electric, Inc., a Michigan Corporation, Defendant.
 Nos. 89-1697, 89-1767.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1991.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case is a dispute between Marvin Bemis, a former employee of Franklin Electric, Inc., and his former boss, John Hogue, then President of Franklin Electric and an administrator of the plan. Bemis originally filed this suit in March 1983, bringing five claims against Hogue, two for violations of the Employee Retirement Income Security Act ("ERISA"). Bemis eventually prevailed on the ERISA claims, and he was awarded $10,290. The judge awarded attorney's fees to Bemis. The liability verdict is not being appealed. Instead this appeal and cross-appeal present three issues for review, all related to the award of fees. First, Hogue argues that the fees should be paid by the Franklin Electric profit-sharing plan rather than by him. We affirm the district court's ruling on this issue. However, because we find that the district court did not apply the correct legal standard in deciding whether to award fees, we remand for reconsideration on that issue. Additionally, both parties complain about the size of the fee award--Bemis thinks that the fee award should be larger, while Hogue thinks that it should be smaller. This issue may become moot, but we nonetheless provide instructions, should the court decide to award fees on remand.
 
 
 2
 * Franklin Electric fired Bemis in March 1982. As an employee of Franklin Electric, Bemis had made contributions to the profit-sharing plan, which all agree was governed by the provisions of ERISA. Immediately after his termination, Bemis wrote to Hogue demanding payment of his nonforfeitable vested portion of the profit-sharing plan. Hogue refused to respond to repeated inquiries regarding his benefits, and he told Bemis to go through legal channels in order to get benefits. Sensing that Hogue was stonewalling, Bemis retained counsel and attempted to get information about the status of his claim from Hogue. Hogue remained unresponsive to all inquiries. In March 1983, about a year after being fired, Bemis filed a five-count complaint against Hogue and the Franklin Electric Company.
 
 
 3
 Counts I and II were ERISA claims. Count I alleged that Hogue had failed to notify him, as required by plan provisions and by ERISA, 29 U.S.C. Sec. 1133, when his claim for benefits was denied, and, further, that Hogue failed to provide him with the plan's review procedure, as also required by 29 U.S.C. Sec. 1133. Additionally, Count I alleged that Bemis had wrongfully been denied benefits after demanding payment of them. Count II alleged that Bemis had requested information regarding his claims pursuant to 29 U.S.C. Sec. 1024(b) and that Hogue had denied him the information, thereby entitling Bemis to damages pursuant to 29 U.S.C. Sec. 1132(c).
 
 
 4
 Counts III, IV, and V eventually dropped out of the case completely. All three related directly to the firing. Count III demanded overtime and liquidated damages under the Fair Labor Standards Act ("FLSA"). Count IV, also brought under the FLSA, demanded damages for overtime pay and for "willful" violations of the FLSA. Count V was a state-law claim for wrongful discharge.
 
 
 5
 These various other counts began to melt away as the case went on. In May 1984, Bemis voluntarily dismissed the FLSA claims without prejudice. In December, Judge Newblatt severed the state-law wrongful discharge claim, and dismissed it. Thus, by December 1984 only the ERISA claims remained.
 
 
 6
 Before Bemis could fully litigate his claim for benefits from the profit-sharing plan, events overtook him. The Franklin Electric Company went out of business and terminated its pension plan. Bemis, like all other plan beneficiaries, received a one-time lump-sum payment from the plan. Bemis received a payout of approximately $50,000 from the profit-sharing plan. Pursuant to a somewhat broadly-worded contingency fee arrangement, Bemis paid his attorney $17,000 upon receipt of this distribution from the profit-sharing plan. Bemis also made $7,000 in additional payments throughout the course of the litigation.
 
 
 7
 In April 1986, the court disposed of some of the issues in the case on cross motions for summary judgment. The court ruled that Bemis was entitled to his benefits, as he had claimed, but that the claim was moot, to the extent that benefits had already been paid. However, the court also determined that the amount of benefits was still at issue. The court also ruled that Bemis was entitled to damages pursuant to 29 U.S.C. Sec. 1132(c) for Hogue's failure to provide information. The court subsequently held a bench trial at which it ruled that the pension plan had already paid Bemis the appropriate amount of benefits. The trial judge also awarded Bemis $10,290 in damages for the Sec. 1132(c) violation. This award is not contested on appeal.
 
 
 8
 Bemis then moved for attorney's fees. Bemis initially requested $35,129.84 in fees. Hogue objected to this figure, arguing that much of the fees resulted from work unrelated to the ERISA claim. The court ordered Bemis to omit fees not attributable to the ERISA counts. Bemis responded by subtracting 25 hours from the prior bill but adding other expenses, therefore asking for even a higher figure. Hogue responded by moving for attorney's fees himself, and also by requesting an evidentiary hearing on the fees issue. The judge denied the first request outright, and he denied the second as premature. He then ordered discovery on the fees issue. In its ruling, before leaving the issue to the parties to hash out, it noted that Bemis sought $35,325. The court did not (as Bemis seems to believe) award him fees at that time. Instead, the court indicated that this was the amount he had claimed and invited the parties to join issue on the amount owed. Hogue deposed Bemis's lawyer, but he did not file any objections to the amount that Bemis claimed that he owed. Notwithstanding the failure to object, the court did not adopt Bemis's figure, instead awarding Bemis the amount actually paid by Bemis to his lawyer--$24,000. Both parties are dissatisfied with this amount. Bemis believes that he is entitled to the full $35,325, and Hogue maintains that the award of $24,000 should be reduced by $17,000--the amount received as the result of the payout of the plan funds received by all members of the Franklin Electric profit-sharing plan.
 
 II
 
 9
 Hogue maintains that he should not be held personally liable for fees. Instead, he argues that the Franklin Electric profit-sharing plan should be the one to pay the fees. Hogue first argues that making him personally liable for fees would be inconsistent with the theory upon which the district court ordered recovery of fees. In applying 29 U.S.C. Sec. 1132(g), the district court originally ruled that the "common fund" theory of recovery was an appropriate means of interpreting the statute. See Alyeska Pipeline Service Company v. The Wilderness Society, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621 (1975). The court ruled that, as the Franklin Electric Plan benefited from the litigation, the common fund should bear the costs of the payment. As we conclude below that it was not appropriate for the lower court to rely on the "common fund" theory, we reject the premise of Hogue's argument. In any event, Hogue's argument is not consistent with the statutory provision for the awarding of fees. 29 U.S.C. Sec. 1132(g)(1) provides:
 
 
 10
 In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
 
 
 11
 There is no provision in the statutory language that can be read to require the plan to pay whenever its members receive some benefit from litigation. Furthermore, the profit-sharing plan itself was never joined as a defendant, and Hogue himself made no attempt to involve the profit-sharing plan in the litigation. Assessing attorney's fees against an entity that was never a party to this litigation would raise serious due process problems. If Hogue believes that the Plan itself has the legal obligation to bear the burden of this litigation itself, he can launch a claim for indemnification against it.
 
 
 12
 Hogue also maintains that he was a trustee and not the plan administrator, and that as a result he cannot be held liable for damages under 29 U.S.C. Secs. 1024(b) & 1132(c). Thus, according to Hogue, he should not be held liable for fees. Hogue never even hinted at this argument below, and the time to raise it for the first time is long past. We do not consider contentions raised for the first time on appeal. Chandler v. Jones, 813 F.2d 773, 777 (6th Cir.1987). In any event, if Hogue is right (and we make no comment whatsoever on the merits of the claim) the argument would go to the legal sufficiency of Bemis's claim on the issue of liability. He is arguing, in effect, that Bemis joined the wrong person. The appropriateness of awarding fees against Hogue personally follows a fortiori from the award on the liability issue, which Hogue does not contest.
 
 III
 
 13
 Having decided that Hogue is the party who has to pay any fees awarded to Bemis, we now turn to the issue of whether fees ought to have been awarded in the first instance. In its initial ruling, the district court concluded that the five-factor test of Eaves v. Penn, 587 F.2d 453 (10th Cir.1978), should not apply in the context of the ERISA fee-shifting provisions. The court conceded that most courts of appeals have held that the Eaves test applies to the ERISA fee-shifting provision, but it concluded that it was free to fashion its own rule, as the Sixth Circuit had not decided the issue yet. Accordingly, the district court originally determined that it would be best to judge the propriety of awards under Sec. 1132(g) based on the "common fund" theory of recovery. In a subsequent order, however, the court stated that it concluded that the "common fund" theory did not apply in this case, as Bemis intended the suit to benefit himself personally rather than the entire fund. We are at a loss to say how the court determined that the award of fees was still appropriate at that point. The court had, after all, determined that the common fund theory should be used in lieu of the Eaves five-factor test. One would think that the conclusion that Bemis had not met the requirements of the common fund theory would then lead inexorably to the conclusion that an award of fees was inappropriate.
 
 
 14
 In any event, this court had, unbeknownst to the district court, decided the issue. In Secretary of Department of Labor v. King, 775 F.2d 666 (6th Cir.1985), we held that the Eaves five-factor test does apply to the ERISA fee-shifting provision. The court should have considered the five factors mentioned therein:
 
 
 15
 (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 16
 Id. at 669. Thus, whatever the merits of the district court's arguments against applying the Eaves/King test, its hands were tied by a prior decision of the circuit. Accordingly, we are bound by precedent to conclude that the court erred in failing to apply the correct standard. In all fairness, we should point out that the district court was not the only one to err--though King was decided well before the onset of this litigation, neither of the parties cited the case before the district court, though everyone seemed to be aware that Eaves was the source of the test. We would suppose that researching the lead case from another circuit to see if we have ruled on an issue would be an early step in legal research. It is not appropriate to begin doing basic legal research only when drafting the appellate brief.
 
 
 17
 We have not hesitated to remand where the district court has applied the wrong legal standard, even when it has done so because the parties failed to cite applicable case law. See, e.g., Allied Accessories and Auto Parts Company, Inc. v. General Motors Corporation, 825 F.2d 971, 973 (6th Cir.1987). The Supreme Court has instructed appellate courts that a remand is normally the appropriate remedy where the lower court fails to apply the correct legal standard. See Pullman-Standard v. Swint, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792 (1982) ("[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one view of the law."). We therefore remand the issue of whether fees are appropriate to the district court for reconsideration in light of the Eaves/King five-factor test.
 
 IV
 
 18
 We now turn briefly to the issue of how the court ought to calculate the amount of fees awarded, should it decide to award fees at all. In so doing, we are not attempting to prejudice the court's determination of whether fees are appropriate on remand, but we are simply providing guidance should it decide to do so. The court originally awarded Bemis $24,000 in fees. Both Bemis and Hogue challenge the district judge's determination of the amount of fees. Apparently, the district court chose to award the fees that Bemis had actually paid to his attorney as of the date of his decision, rather than the bill that Bemis would have received were his attorney not working on a contingency-fee basis.
 
 
 19
 Bemis maintains that the award is too low. The gist of his argument seems to be that the court had initially awarded him $35,325, and that the court did not demonstrate a sufficient reason to change its mind. The premise of this argument is not valid. In its memorandum opinion, the trial court merely made a preliminary ruling that served, in essence, to set out the manner by which the parties should proceed. The court denied two of Hogue's motions--for fees and for an evidentiary hearing--and it ordered discovery on the fees issue. In addition, the court did find one particular fee claim (for $150) to be improper. It then stated, in the last sentence of the order, that "[t]otal fees sought are $35,475, so this leaves $35,325." (emphasis added). We concede that this sentence, if read in isolation, is slightly ambiguous. One could possibly read this statement to mean, by negative implication, that the court awarded Bemis $35,325 in fees. A more rational interpretation, however, would be that the amount potentially awardable to Bemis as of the time of the order was $35,325. This interpretation makes sense in light of the fact that the court also ordered that Hogue engage in discovery and submit a bill of particulars setting out those fees that he challenged. It would hardly make sense for the court to order recovery for a certain amount and then order discovery. Thus, we are not persuaded by Bemis's argument.
 
 
 20
 Hogue's argument is also flawed, however. Hogue maintains that the fee award is too high. He objects, in particular, to the inclusion of the $17,000 paid to Bemis's attorney after Bemis received his claimed benefits from the plan. The gist of Hogue's argument, so far as we can tell, is that Bemis received the benefits from the profit-sharing plan as the result of events not related to the litigation and that, as the payment to his attorney resulted from the receipt of these benefits, Bemis should not be able to receive reimbursement from this payment. This argument suffers from both logical and legal flaws.
 
 
 21
 Hogue assumes that the amount actually paid by a client limits the recovery for attorney's fees. This circuit has not yet addressed the issue of how the amount of fees should be calculated when fees are awarded under Sec. 1132(g). Were this a civil rights case, there is no question that the court would have had no choice but to apply a lodestar approach and that the content of the contingency fee arrangement would be irrelevant to that determination. See Blanchard v. Bergeron, --- U.S. ----, 109 S.Ct. 939, 943-45 (1989). The issue for us is whether this holding applies to a Sec. 1132(g) fee award.
 
 
 22
 Some circuits have chosen to apply in the ERISA context doctrines interpreting the fee-shifting provisions of civil rights statutes. See, e.g., Chambless v. Masters, Mates, & Pilots Pension Plan, 885 F.2d 1053 (2d Cir.1989), cert. denied, 110 S.Ct. 2587 (1990); Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1355 (8th Cir.1980). Others, however, have been less sanguine about the similarities between the statutes. See, e.g., Bittner v. Sadoff & Rudoy Industries, 728 F.2d 820, 830 (7th Cir.1984); Gordon v. United States Steel Corp., 724 F.2d 106, 108 (10th Cir.1983); Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1265-66 (5th Cir.1980).
 
 
 23
 Upon consideration, we believe that the latter course is most appropriate. In Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7 (1983), a Sec. 1988 fee-shifting case, the Court stated that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " The Second Circuit interpreted this language to mean that standards set out in the context of civil rights cases apply to the ERISA fee-shifting provision. Chambless, 885 F.2d at 1058. 29 U.S.C. Sec. 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." This provision does not contain the "prevailing party" language of 42 U.S.C. Sec. 1988 and other similar statutes. There is, moreover, no legislative history leading us to the conclusion that the ERISA fee-shifting provision is to be patterned after those with the "prevailing party" language. Finally, civil rights laws are seen as benefiting the entire society rather than the pecuniary interests of particular identifiable individuals. In other words, civil rights laws have a significant public-goods character, which the ERISA statute does not. Accordingly, we believe that decisions interpreting the fee shifting provisions of Title VII, the Clean Water Act, and other such statutes are not directly binding on us in interpreting the provisions of the ERISA fee-shifting statute. That is not to say, however, that the reasoning from decisions interpreting other fee-shifting provisions might not be instructive.
 
 
 24
 The language of Sec. 1132(g)(1) provides virtually no guidance, stating that the court has discretion to award "a reasonable attorney's fee." The legislative history is also silent as to how fee awards should be calculated. In the civil rights context, there is no question that a fee award is not limited by any contingency fee arrangement. Blanchard, --- U.S. at ----, 109 S.Ct. at 944-45. We do not believe that the presence of a contractual obligation to pay a certain amount should limit the potential recovery under Sec. 1132(g). As in the civil rights context, ERISA plaintiffs will often receive injunctive relief. Cf. Id. at ----, 109 S.Ct. at 945. Contingency fee arrangements are typically employed where a plaintiff who could not otherwise afford an attorney enters a contractual arrangement redistributing potential benefits and burdens of litigation. We see no reason why the existence of a contractual arrangement of this type should affect rights as to third parties. Moreover, a per se rule limiting recovery of fees to the amount that the plaintiff is actually obligated to pay would create anomalous results. We can imagine that two identically situated plaintiffs in the same litigation whose claims took exactly the same amount of resources to pursue could receive different amounts. One attorney could be compensated at a much different rate than another, simply because one attorney was willing to enter into a contingency fee arrangement while the other was not. This would be an odd result indeed.
 
 
 25
 Nonetheless, the court is obligated to assure that fees are "reasonable." This determination should be committed to the sound discretion of the district court. The court is free to take into account prevailing market rates for comparable legal work, the amount of time reasonably necessary to accomplish tasks in the course of the litigation and the quality of representation provided by counsel. However, the court must provide some basis for its determination. See Seamon v. Vaughan, 921 F.2d 1217, 1220 (11th Cir.1991). The only basis that we can find for the $24,000 fee award--that it was actually paid by the plaintiff, pursuant to a contingency fee award--is not acceptable. Accordingly, should it decide to award fees, the court must make further factual determinations on that issue.
 
 V
 
 26
 The court's decision to award fees against Hogue rather than the fund is AFFIRMED. On the issue of whether fees are to be awarded and the amount of the fees, if awarded, we VACATE and REMAND for further findings of fact consistent with this opinion.