BLANCHARD *v.* BERGERON ET AL.

No. 87–1485.   Argued November 28, 1988—Decided February 21, 1989

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, MARSHALL, BLACKMUN, STEVENS, O'CONNOR, and KENNEDY, JJ., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 97.

*William W. Rosen* argued the cause for petitioner. With him on the brief was *Charles J. Pisano.*

*Edmond L. Guidry III* argued the cause and filed a brief for respondent.*

JUSTICE WHITE delivered the opinion of the Court.

The issue before us is whether an attorney's fee allowed under 42 U. S. C. § 1988 is limited to the amount provided in a contingent-fee arrangement entered into by a plaintiff and his counsel.

I

Petitioner Arthur J. Blanchard brought suit in the United States District Court for the Western District of Louisiana alleging violations of his civil rights under 42 U. S. C. § 1983. Blanchard asserted that he was beaten by Sheriff's Deputy James Bergeron while he was in Oudrey's Odyssey Lounge. Blanchard brought his claim against the deputy, the sheriff, and the St. Martin Parish Sheriff's Department. He also joined with his civil rights claim a state-law negligence claim against the above defendants and against the owners and a

---

*Briefs of *amici curiae* urging reversal were filed for the Advocacy Center for the Elderly and Disabled by *M. David Gelfand;* for Farnsworth, Saperstein & Seligman et al. by *Guy T. Saperstein, Antonia Hernandez,* and *E. Richard Larson;* and for the National Association of Legal Assistants, Inc., by *John A. DeVault III.*

manager of the lounge and the lounge itself. The case was tried and a jury awarded Blanchard compensatory damages in the amount of $5,000 and punitive damages in the amount of $5,000 on his § 1983 claim. Under the provisions of 42 U. S. C. § 1988, which permit the award of attorney's fees to a prevailing party in certain federal civil rights actions,[1] Blanchard sought attorney's fees and costs totaling more than $40,000. The District Court, after reviewing the billing and cost records furnished by counsel, awarded $7,500 in attorney's fees and $886.92 for costs and expenses.[2]

---

[1] The Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. 94–559, 90 Stat. 2641, as set forth in 42 U. S. C. § 1988 states:

". . . In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The section states that the court "in its discretion" may allow a fee, but that discretion is not without limit: the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 402 (1968); *Hensley* v. *Eckerhart*, 461 U. S. 424, 429 (1983).

[2] The District Court referred to the guidelines announced by this Court in *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983), for determining the calculation of fee awards. In that case, we said that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.*, at 433. We also went on to say that "[t]he district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Id.*, at 434, quoting S. Rep. No. 94–1011, p. 6 (1976). The District Court here first determined that the plaintiff, Blanchard, was a prevailing party. Then, to arrive at a reasonable fee, the court multiplied what it deemed to be the reasonable hours expended on the litigation by a reasonable hourly rate. This lodestar figure was then further reduced by the District Court based on its considerations of "the elemental nature of this litigation and the contingency fee arrangement entered." App. to Pet. for Cert. 14A (ruling in Civil Action No. 83–0755, filed Oct. 23, 1986; Record 363, 370). Accordingly, the District Court adjusted its lodestar of $9,720 downward to the awarded fee of $7,500. We express no opinion on the number of hours reasonably ex-

Petitioner appealed this award to the Court of Appeals for the Fifth Circuit, seeking to increase the award. The Court of Appeals, however, reduced the award because petitioner had entered into a contingent-fee arrangement with his lawyer,[3] under which the attorney was to receive 40% of any damages awarded should petitioner prevail in his suit. While recognizing that other Circuits had different views, the court held that it was bound by its prior decision in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F. 2d 714, 718 (1974), to rule that the contingency-fee agreement "serves as a cap on the amount of attorney's fee to be awarded." 831 F. 2d 563, 564 (1987). The court further found that hours billed for the time of law clerks and paralegals were not compensable since they would be included within the contingency fee. *Ibid.* Accordingly, the court limited the fee award to 40% of the $10,000 damages award—$4,000.

Because other Courts of Appeals have concluded that a § 1988 fee award should not be limited by a contingent-fee agreement between the attorney and his client,[4] we granted certiorari to resolve the conflict, 487 U. S. 1217 (1988). We now reverse.

---

pended on this litigation or on the reasonable hourly rate for the work involved here or even whether the District Court correctly characterized the nature of the litigation as "elemental."

[3] Blanchard's attorney when he filed his original complaint on March 29, 1983, was Charles Pisano. On June 11, 1984, the District Court granted a motion substituting William Rosen as counsel.

[4] *Cooper* v. *Singer*, 719 F. 2d 1496, 1507 (CA10 1983); *Lusby* v. *T. G. & Y. Stores, Inc.*, 749 F. 2d 1423 (CA10 1984), cert. denied, 474 U. S. 818 (1985); *Sisco* v. *J. S. Alberici Constr. Co.*, 733 F. 2d 55, 56 (CA8 1984); *Sanchez* v. *Schwartz*, 688 F. 2d 503, 505 (CA7 1982). The Fifth Circuit is not alone, however, in holding that a contractual agreement between a § 1983 plaintiff and counsel should govern the award of attorney's fees under § 1988. See *Pharr* v. *Housing Authority of Prichard*, 704 F. 2d 1216 (CA11 1983).

## II

Section 1988 provides that the court, "in its discretion, may allow . . . a reasonable attorney's fee . . . ." The section does not provide a specific definition of "reasonable" fee, and the question is whether the award must be limited to the amount provided in a contingent-fee agreement. The legislative history of the Act is instructive insofar as it tells us: "In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S. Rep. No. 94–1011, p. 6 (1976) (citing *Davis* v. *County of Los Angeles*, 8 EPD ¶9444 (CD Cal. 1974); and *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680, 684 (ND Cal. 1974)).

In many past cases considering the award of attorney's fees under § 1988, we have turned our attention to *Johnson* v. *Georgia Highway Express, Inc., supra,* a case decided before the enactment of the Civil Rights Attorney's Fee Award Act of 1976. As we stated in *Hensley* v. *Eckerhart,* 461 U. S. 424, 429–431 (1983), *Johnson* provides guidance to Congress' intent because both the House and Senate Reports refer to the 12 factors set forth in *Johnson* for assessing the reasonableness of an attorney's fee award.[5] The Senate Re-

---

[5] The 12 factors set forth by the *Johnson* court for determining fee awards under § 706(k) of Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e-5(k) are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F. 2d, at 717–719.

port, in particular, refers to three District Court decisions that "correctly applied" the 12 factors laid out in *Johnson.*[6]

In the course of its discussion of the factors to be considered by a court in awarding attorney's fees, the *Johnson* court dealt with fee arrangements:

> "'Whether or not [a litigant] agreed to pay a fee and in what amount is not decisive. Conceivably, a litigant might agree to pay his counsel a fixed dollar fee. This might be even more than the fee eventually allowed by the court. Or he might agree to pay his lawyer a percentage contingent fee that would be greater than the fee the court might ultimately set. Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agree but what is reasonable.'" 488 F. 2d, at 718 (quoting *Clark* v. *American Marine Corp.*, 320 F. Supp. 709, 711 (ED La. 1970), aff'd 437 F. 2d 959 (CA5 1971)).

Yet in the next sentence, *Johnson* says "In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount." 488 F. 2d, at 718. This latter statement, never disowned in the Circuit, was the basis for the decision below. But we doubt that Congress embraced this aspect of *Johnson*, for it pointed to the three District Court cases in which the factors are "correctly applied." Those cases clarify that the fee arrangement is but a single factor and not determinative. In *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (ND Cal. 1974), aff'd, 550 F. 2d 464 (CA9 1977), rev'd on other grounds, 436 U. S. 547 (1978), for example,

---

[6]"The appropriate standards, see *Johnson* v. *Georgia Highway Express*, 488 F. 2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (N. D. Cal. 1974); *Davis* v. *County of Los Angeles*, 8 E. P. D. ¶ 9444 (C. D. Cal. 1974); and *Swann* v. *Charlotte-Mecklenburg Board of Education*, 66 F. R. D. 483 (W. D. N. C. 1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." S. Rep. No. 94–1011, p. 6 (1976).

the District Court considered a contingent-fee arrangement to be a factor, but not dispositive, in the calculation of a fee award. In *Davis* v. *County of Los Angeles, supra,* the court permitted a fee award to counsel in a public interest firm which otherwise would have been entitled to no fee. Finally, in *Swann* v. *Charlotte-Mecklenburg Board of Education,* 66 F. R. D. 483 (WDNC 1975), the court stated that reasonable fees should be granted regardless of the individual plaintiff's fee obligations. *Johnson*'s "list of 12" thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees; but the one factor at issue here, the attorney's private fee arrangement, standing alone, is not dispositive.

The *Johnson* contingency-fee factor is simply that, a factor. The presence of a pre-existing fee agreement may aid in determining reasonableness. " 'The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case.' " *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air,* 483 U. S. 711, 723 (1987) quoting *Johnson,* 488 F. 2d, at 718. But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute and its policy and purpose.

As we understand § 1988's provision for allowing a "reasonable attorney's fee," it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount. The defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way. It is true that the purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs, and it is of course arguable that if a plaintiff is able to secure an attorney

on the basis of a contingent or other fee agreement, the purpose of the statute is served if the plaintiff is bound by his contract. On that basis, however, the plaintiff should recover nothing from the defendant, which would be plainly contrary to the statute. And Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel. Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of this provision. And where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee. All of this is consistent with and reflects our decisions in cases involving court-awarded attorney's fees.

*Hensley* v. *Eckerhart*, 461 U. S. 424 (1983), directed lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended on successful claims. And we have said repeatedly that "[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum* v. *Stenson,* 465 U. S. 886, 888 (1984). The courts may then adjust this lodestar calculation by other factors. We have never suggested that a different approach is to be followed in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement. To the contrary, in *Hensley* and in subsequent cases, we have adopted the lodestar approach as the centerpiece of attorney's fee awards. The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation. In *Blum,* we rejected, as contrary to congressional intent, the notion that fees are to be calculated on a cost-based standard. Further, as we said in *Blum,* "Congress did not

intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." 465 U. S., at 894. That a nonprofit legal services organization may contractually have agreed not to charge *any* fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action, calculated in the usual way.

It is clear that Congress "intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of equally complex Federal litigation . . . and not be reduced because the rights involved may be nonpecuniary in nature." S. Rep. No. 94–1011, at 6. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley, supra,* at 429, quoting H. R. Rep. No. 94–1558, p. 1 (1976). Even when considering the award of attorney's fees under the Clean Air Act, 42 U. S. C. § 7401, the Court has applied the § 1988 approach, stating: "A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable fee' is wholly consistent with the rationale behind the usual fee-shifting statute . . . ." *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air,* 478 U. S. 546, 565 (1986).

If a contingent-fee agreement were to govern as a strict limitation on the award of attorney's fees, an undesirable emphasis might be placed on the importance of the recovery of damages in civil rights litigation. The intention of Congress was to encourage successful civil rights litigation, not to create a special incentive to prove damages and shortchange efforts to seek effective injunctive or declaratory relief. Affirming the decision below would create an artificial disincentive for an attorney who enters into a contingent-fee agreement, unsure of whether his client's claim sounded in state tort law or in federal civil rights, from fully exploring all possible avenues of relief. Section 1988 makes no distinction between actions for damages and suits for equitable relief.

Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages.

It should also be noted that we have not accepted the contention that fee awards in § 1983 damages cases should be modeled upon the contingent-fee arrangements used in personal injury litigation. "[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Riverside* v. *Rivera*, 477 U. S. 561, 574 (1986).

Respondent cautions us that refusing to limit recovery to the amount of the contingency agreement will result in a "windfall" to attorneys who accept § 1983 actions. Yet the very nature of recovery under § 1988 is designed to prevent any such "windfall." Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims. Accordingly, fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim. It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case. The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel.

The contingent-fee model, premised on the award to an attorney of an amount representing a percentage of the damages, is thus inappropriate for the determination of fees under § 1988. The attorney's fee provided for in a contingent-fee agreement is not a ceiling upon the fees recoverable under § 1988. Accordingly, we reverse and remand.

## III

Blanchard also complains of the failure of the court below to award fees in compensation for the time of paralegals and law clerks. Because the Court of Appeals held that recovery for legal fees was to be limited by the contingency agreement, that court never addressed the issue of separate billing for legal assistants. "[A]ny hours 'billed' by law clerks or paralegals would also naturally be included within the contingency fee." 831 F. 2d, at 564. Since we hold today that the contingency-fee arrangement does not control the award for attorney's fees, the determination of the total fee will be considered on remand. We reserve for another day the question whether legal assistants' fees should be included in the award.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I concur in the judgment and join the opinion of the Court except that portion which rests upon detailed analysis of the Fifth Circuit's opinion in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F. 2d 714 (1974), and the District Court decisions in *Swann* v. *Charlotte-Mecklenburg Board of Education*, 66 F. R. D. 483 (WDNC 1975); *Stanford Daily* v. *Zurcher*, 64 F. R. D. 680 (ND Cal. 1974); and *Davis* v. *County of Los Angeles*, 8 EPD ¶ 9444 (CD Cal. 1974). See *ante*, at 91–93. The Court carefully examines those opinions, separating holding from dictum, much as a lower court would study our opinions in order to be faithful to our guidance. The justification for this role reversal is that the Senate and House Committee Reports on the Civil Rights Attorney's Fees Awards Act of 1976 referred approvingly to *Johnson*, and the Senate Report alone referred to the three District

Court opinions as having "correctly applied" *Johnson*. The Court resolves the difficulty that *Johnson* contradicts the three District Court opinions on the precise point at issue here by concluding in effect that the analysis in *Johnson* was dictum, whereas in the three District Court opinions it was a holding. Despite the fact that the House Report referred *only* to *Johnson*, and made no mention of the District Court cases, the Court "doubt[s] that Congress embraced this aspect of *Johnson*, for it pointed to the three District Court cases in which the factors are 'correctly applied.'" *Ante*, at 92.

In my view Congress did no such thing. Congress is elected to enact statutes rather than point to cases, and its Members have better uses for their time than poring over District Court opinions. That the Court should refer to the citation of three District Court cases in a document issued by a single committee of a single house as the action *of Congress* displays the level of unreality that our unrestrained use of legislative history has attained. I am confident that only a small proportion of the Members of Congress read either one of the Committee Reports in question, even if (as is not always the case) the Reports happened to have been published before the vote; that very few of those who did read them set off for the nearest law library to check out what was actually said in the four cases at issue (or in the more than 50 other cases cited by the House and Senate Reports); and that *no* Member of Congress came to the judgment that the District Court cases would trump *Johnson* on the point at issue here because the latter was dictum. As anyone familiar with modern-day drafting of congressional committee reports is well aware, the references to the cases were inserted, at best by a committee staff member on his or her own initiative, and at worst by a committee staff member at the suggestion of a lawyer-lobbyist; and the purpose of those references was not primarily to inform the Members of Congress what the bill meant (for that end *Johnson* would not merely have been

cited, but its 12 factors would have been described, which they were not), but rather to influence judicial construction. What a heady feeling it must be for a young staffer, to know that his or her citation of obscure district court cases can transform them into the law of the land, thereafter dutifully to be observed by the Supreme Court itself.

I decline to participate in this process. It is neither compatible with our judicial responsibility of assuring reasoned, consistent, and effective application of the statutes of the United States, nor conducive to a genuine effectuation of congressional intent, to give legislative force to each snippet of analysis, and even every case citation, in committee reports that are increasingly unreliable evidence of what the voting Members of Congress actually had in mind. By treating *Johnson* and the District Court trilogy as fully authoritative, the Court today expands what I regard as our cases' excessive preoccupation with them—and with the 12-factor *Johnson* analysis in particular. See, *e. g.*, *Blum* v. *Stenson*, 465 U. S. 886, 893–896, 900 (1984); *Hensley* v. *Eckerhart*, 461 U. S. 424, 429–432, 434–435 (1983). This expansion is all the more puzzling because I had thought that in the first *Delaware Valley* case, *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546 (1986), we had acknowledged our emancipation from *Johnson*, see 478 U. S., at 563–565. Indeed, the plurality opinion in the second *Delaware Valley* case, *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 483 U. S. 711, 723–724 (1987) *(Delaware Valley II)*, discussed *Johnson* and the other three cases almost exclusively by way of refuting arguments made in reliance upon them in JUSTICE BRENNAN's separate opinion in *Blum* v. *Stenson, supra*, at 902–903. Moreover, the concurring opinion that formed the fifth vote for the judgment in *Delaware Valley II* did not discuss the four cases at all. 483 U. S., at 731–734 (O'CONNOR, J., concurring in part and concurring in judgment). Except for the few passages to which I object, today's opinion admirably follows our more

recent approach of seeking to develop an interpretation of the statute that is reasonable, consistent, and faithful to its apparent purpose, rather than to achieve obedient adherence to cases cited in the committee reports. I therefore join the balance of the opinion.