Lisa DANGLER, on Behalf of Justin DANGLER, her minor son, Plaintiff,

v.

YORKTOWN CENTRAL SCHOOLS, John V. Doherty, Superintendent of Schools (sued in his official and individual capacities), and Michael Frischman, Principal, Yorktown High School, (sued in his official and individual capacities), Defendants.

No. 91 Civ. 3469 (GLG).

United States District Court, S.D. New York.

Nov. 21, 1991.

---

**1176**

Michael H. Sussman, Goshen, N.Y., for plaintiff.

Ahmuty, Demers & McManus, Albertson, N.Y. (Michael J. Rabus, of counsel), for defendants.

## OPINION

GOETTEL, District Judge:

Our federal court system is being brought into ridicule and our Constitution is being debased by persons who proclaim themselves to be its strongest supporters: civil rights advocates and attorneys purportedly working in the public interest. By attempting to elevate mere personal desires into constitutional rights and claiming denial of their civil rights whenever their desires are not realized, these persons are demeaning the essential rights and procedures that protect us all.

Justin Dangler, a third year student at Yorktown High School, and his parents wanted him admitted to the High School National Honor Society, believing that this accolade would promote his acceptance at prestigious colleges. To become a member of the National Honor Society, a high school student must have a grade average above a certain level and qualify in three other categories: leadership, service, and character. In addition, the Yorktown chapter stresses the qualities of honesty and exemplary character. Selections to the National Honor Society are made by a Faculty Admission Committee upon recommendations by teachers in the high school familiar with those students who have academic eligibility. Justin Dangler met the academic standards. However, of all of the third year students who so did, he received the poorest ratings from the faculty who knew him. Two teachers who knew him well spoke against his nomination at the Committee meeting. The Faculty Admission Committee, some of whom also knew the applicant personally, unanimously decided that he had not met all the criteria for membership. (One or two other students were also rejected.) A letter was written informing Justin of his rejection, but advising that he could apply again the following semester and urging him to "strive to attain a high quality of character, leadership, and service."

The Dangler family was outraged by this rejection. They demanded an explanation and the intervention of school officials in this decision. They also disputed various aspects of Justin's high school record. The Danglers succeeded in having the high school principal conduct an investigation of the selection process but, when he declined to intervene and pleas to other school officials were unsuccessful, commenced this suit. (The facts leading up to the commencement of suit are set forth in more detail in an earlier decision. *See Dangler v. Yorktown Cent. Schools,* 771 F.Supp. 625 (S.D.N.Y.1991)).

The plaintiff in the action was Lisa Dangler, Justin's mother, who sued on his behalf, alleging three causes of action under 42 U.S.C. § 1983. The first claim was that Justin was deprived of property without due process of law. That was clearly a frivolous claim since there exists no property right giving rise to a constitutional claim to membership in the National Honor Socie-

ty. Federal courts have so previously held. As we noted in our earlier opinion, 771 F.Supp. 625, at 628:

> Justin is not the first student to litigate this issue and unanimously, courts have concluded that membership in the National Honor Society does not give rise to a property interest which entitled one to due process of law.

That claim was dismissed prior to trial.

Two other claims were alleged, predicated on the first amendment. First, plaintiff alleged that the refusal of the school authorities to select Justin Dangler for membership in the honor society was done in retaliation for his father's actions with respect to the school on numerous matters concerning both his children and the operation of the school, in general. Second, plaintiff claimed that the school authorities retaliated against Justin for publishing an article indicating the existence of racial prejudice among students at the high school. These allegations, if supported by evidence, were colorable constitutional claims. However, the evidence presented at trial showed the claims to be factually baseless.

To begin, the article written by Justin Dangler, which was not as adverse to the student body as claimed by him and which was published with school approval, did not come out until after the decision to deny his admission to the honor society had been made. With respect to his father's activities, it was established at trial that Mr. Dangler had filed numerous complaints with the school, civil rights agencies and the courts concerning Yorktown High School.[1] These activities clearly did not endear the family to the administration at Yorktown High School. However, there was a total absence of proof that any of this had impact on the recommendations of the teachers or the decision of the Faculty Selection Committee.

At the conclusion of the evidence, the court dismissed the case as to the Superintendent of Schools (who took no positive action with respect to the application for membership) and reserved decision as to the other two defendants, the School District, and the high school principal, Michael Frischman. The jury then returned a verdict in favor of those defendants.

All defendants now seek an award of reasonable attorney's fees and costs. Section 1988 of Title 42 authorizes a district court to award reasonable attorney's fees to the prevailing party in a civil rights litigation such as this. The Supreme Court has put a gloss on this, however, with the result that plaintiff is awarded attorney's fees even if he or she prevails on only part of the case and even though a small benefit is derived while a prevailing defendant may obtain attorney's fees only "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though the action was not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (Title VII), *accord Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (§ 1988). In this circuit, defendant's attorney's fees have been awarded where the plaintiff's civil rights claims are groundless and unreasonable. *See Davidson v. Keenan*, 740 F.2d 129 (2d Cir.1984); *Harbulak v. County of Suffolk*, 654 F.2d 194 (2d Cir.1981). Other circuits make similar awards. *See, e.g., Bernstein v. Menard*, 728 F.2d 252 (4th Cir.1984) (awarding fees in a § 1983 action against a principal and the school district where the action was found to be frivolous and vexatious).

Plaintiff's counsel argues that fees should not be awarded to a prevailing defendant since "such a practice would chill plaintiffs from filing civil rights suits." Plaintiff's Brief in Opposition, at 1. Indeed, a chilling effect is a real consideration. Accordingly, in recognition of the fact that a plaintiff with a meritorious civil rights claim may nevertheless lose in court, the Supreme Court set a stricter standard for the award of attorney's fees to a prevailing defendant. Thus, the *Christiansburg* standard for attorney's fees has the effect of preventing a chilling effect while penalizing those whose suits are frivolous.

---

1. He was successful in some of these matters and unsuccessful in others. Some concerned

matters as trivial as changing a single grade of his daughter from an A to an A+.

Moreover, the fact that one claims to be litigating a civil rights case which would benefit the public is no shield from *Christiansburg*. We applaud the accomplishments of those who litigate in the public interest. But, there is no civil right to make false allegations. It is simply not in the public's interest to have frivolous cases litigated. The award of attorney's fees to a prevailing defendant under the *Christiansburg* standard thus protects the public from those who irresponsibly claim to be acting for the public good.

Plaintiff's counsel further argues that because the court did not grant summary judgment to the defendants (no motion was made), or direct a verdict in their favor, the case must have had sufficient merit to avoid deeming the action frivolous. Summary judgment is a disfavored remedy in this Circuit so long as there are disputed facts.[2] Directed verdicts are also disfavored because they require a retrial if improvidently granted.[3] Nothing in this court's rulings throughout the trial in any way indicated that this court believed the factual allegations or claims of the plaintiff. On the plaintiff's motion for a preliminary injunction we noted that the record "strongly suggests that no improper motives" were involved, but since questions of motive cannot be decided on motion because credibility is an issue of fact, a "specter of a factual question" had been raised. *Dangler,* 771 F.Supp. at 631.

■ To underscore the lack of merit in plaintiff's case, we note that had the jury returned a verdict in the plaintiff's favor, this court would have set it aside. The evidence overwhelmingly established that the Faculty Selection Committee evaluated Justin Dangler's application on its merits and without any consideration of an article which had not been published or read by them or the litigious activities of Justin Dangler's father. Indeed, the evidence at trial brought out substantial adverse information concerning Justin Dangler which was not known to the Faculty Selection

Committee and which, had it been known, would have even more strongly justified its decision not to select him. On the basis of all of the foregoing, we conclude that the defendants are entitled to attorney's fees in this case.

■ The defendants' firm claims that 465.5 hours of time were expended during the several months that this case was being prepared for trial and tried. We consider those hours claimed to be only slightly excessive for the work involved. With respect to the hourly rates, defendants' counsel charged their client no more than $105 per hour for a partner's time and only $50 per hour for an associate's time. For a firm practicing in the New York metropolitan area, these charges are unusually low. (Their explanation for these low rates is that they have to charge them in order to get the work.) Consequently, they seek a 50% increase in their time charges, which they claim would be a fair and reasonable fee and the prevailing market rate. It is true that the Supreme Court, in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), held that prevailing market rates in the community should be used for setting fees. However, that was in connection with Legal Aid Society representation where the client had not been charged a fee. Moreover, the court in that case refused to increase the rates based on other considerations. In *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), the Supreme Court held that the attorney's fees awarded to a prevailing plaintiff should not be capped by a contingency fee agreement between plaintiff and its counsel. However, where we are considering fees awarded to a prevailing defendant, there is no need to go beyond the contractual relationship, as in *Blanchard,* in order to create a special incentive for the civil rights issues to be fully explored. Therefore, defendants' award will be made at the billing rates. Consequently, of the $60,736 of billed time, we award an attorney's fee of $60,000.

---

**2.** Even in an application for Rule 11 sanctions against an attorney, the denial of a summary judgment motion does not create an immunity from an award. *Healey v. Chelsea Resources Ltd.,* 947 F.2d 611 (2d Cir.1991).

**3.** In theory, at least, the trial court retains the ability to set aside unwarranted jury verdicts and, consequently, matters should be left to the jury's initial determination.

In addition, defendants seek $5,699.29 in out-of-pocket costs. Most of this is for witness expenses. Certain portions of this and the other out-of-pocket costs are appropriately billed as court costs and should not be sought as part of an award of attorney's fees and costs at this time. We therefore restrict our award of attorney's fees and costs to the $60,000 mentioned above and will allow defendants to bill costs in the appropriate manner. The Clerk may enter judgment accordingly.

SO ORDERED.