DECISION
This matter is before the Superior Court on remand from the Rhode Island Supreme Court. In its remand, the Supreme Court directed the Superior Court to calculate (i) the actual diminution in value of plaintiff Clifford McFarland's ("McFarland") stock interest in Read 
Lundy, Inc. ("RL") and (ii) the amount of attorney's fees pursuant to G.L. 1956 § 6-41-4, the Uniform Trade Secrets Act. The Supreme Court further directed this Court to enter an award of punitive damages against all defendants in an amount equaling twice the award of compensatory damages.
 Facts/Travel
After prevailing in this Court, the plaintiffs appealed the damage award made by this Court after trial without a jury. This case first came before this Court for trial on plaintiffs' — R L, an industrial supplier, and McFarland, sole owner of R L — tort action against the defendants — Michael Brier ("Brier"); his accounting firm, Michael Brier Company ("Brier Co."); and Consigned Systems, Inc. ("CSI"), a corporation formed by Brier and former R L employee, Dennis Bibeau ("Bibeau"). Brier and his accounting firm, Brier Co., had been retained by R L to assist in the securing of financing of the buyout of R L by Bibeau. Brier Co. is a corporation consisting of Brier, the only accountant, and one secretary. After trial without a jury, the Court found that
 "CSI had misappropriated trade secrets from R L, that Brier was guilty of tortious interference with the contractual relationship between McFarland and Bibeau, [ ] that Brier and CSI had interfered with the prospective business advantage of R L, and that Brier disclosed confidential business information belonging to his former client, in violation of his fiduciary duty." McFarland v. Brier, 769 A.2d 605, 609 (R.I. 2001).
This Court denied plaintiff McFarland's claim for compensation for the diminution in the value of R L stock on the ground that he had not accounted for his failure to mitigate his damages. In addition, this Court denied the plaintiffs' claim for an award of punitive damages based on its determination that defendants' conduct did not rise to the requisite egregious level. With respect to plaintiffs' claims against Brier Co., this Court found that plaintiffs had failed to present compelling evidence to justify piercing Brier Co.'s corporate veil. Accordingly, this Court awarded plaintiffs damages of $67,936, with Brier and CSI jointly and severally liable.
On appeal, plaintiffs raised questions regarding (1) mitigation of damages, (2) the pertinent standard for an award of punitive damages and therefrom, an award of attorney's fees pursuant to the Uniform Trade Secrets Act and (3) Brier and Co.'s corporate liability. Regarding mitigation of damages, the Supreme Court, having determined that the plaintiffs had mitigated their damages, reinstated the original amount of compensatory damages to $151,380, the amount which this Court had found to represent the actual amount of R L's losses caused by the defendants' misconduct. Based on said determination, the Supreme Court directed this Court to calculate the "actual diminution in the value of plaintiffs' stock." Id. at 611. Next, addressing punitive damages in the context of a violation of the Uniform Trade Secrets Act, the Supreme Court noted that G.L. 1956 § 6-41-3(b) expressly provides for exemplary damages for willful and malicious misappropriation. Id. at 611-12. Finding that the misconduct in this matter was willful and malicious, the Supreme Court directed that an award of punitive damages enter in the amount of twice the total award for compensatory damages. In addition, the Supreme Court noted that § 4 of the Uniform Trade Secrets act provides for an award of attorney's fees in cases, such as this one, where willful and malicious misappropriation exists. Id. at 613 (citing G.L. 1956 § 6-41-4). Thus, the Supreme Court directed this Court to calculate the amount of attorney's fees to be awarded to the plaintiffs. Finally, with respect to the corporate liability of Brier 
Co., the Supreme Court deemed it to be jointly and severally liable for all damages. Id. at 614.
This matter came before this Court for an evidentiary hearing on July 20, 2001. While Brier appeared pro se, Brier Co. and CSI did not appear at the hearing. Mobile Homeowners Rights, Inc. v. Mobile Village, Inc.,736 A.2d 98, 99 (R.I. 1999) (order) ("[A] corporation may not appear pro se."). Pursuant to the Supreme Court's remand, this Court makes the following findings of fact and conclusions of law.
 Diminution in Value of R L Stock
With respect to this Court's determining the diminution in the value of McFarland's stock in R L, plaintiffs relied on the relevant evidence presented during trial, including testimony of plaintiffs' expert Leo Delisi ("Delisi"), as well as particular portions of the trial transcript of the testimony of expert witness for the defense, David W. Quigley ("Quigley"). Defendant Brier presented trial transcripts of defense experts, Quigley and Jerome L. Lefkowitz ("Lefkowitz") to support his contentions that no actual diminution in value of R L stock ever occurred, and even if it had, there are no credible accounting numbers upon which to make such a determination.[1] During the hearing, the Court did not allow Brier to examine R L's counsel regarding the value of the stock because all of the evidence on this issue had been admitted during the trial. Further, Brier had not sought leave of court to offer additional evidence. Moreover, during the hearing, he did not proffer any basis that would warrant reopening the record on this issue.
Delisi's calculation addressed the actual damage done by the defendants, and not the overall value of the company "before and after." Although defense experts assert the contrary, the Court finds that Delisi's calculation is correct given the ability of the plaintiffs, through their records and the calculations of Catherine Parente (Parente), to specifically determine the amount of lost profits and therefore an "annualized" figure upon which Delisi could form his opinion. Despite his critique of Delisi's analysis, defense expert Quigley specifically admitted that the discount rate used by Delisi in forming his opinion was reasonable and that his calculations were correct. (Pls.' Ex. E). Further, Quigley conceded generally the appropriateness of Delisi's methodology. In addition, with respect to determining the value of the lost opportunity to sell to a customer, Quigley's calculation — "[p]robably take the profits from that and take some value of the income stream that you wouldn't have gotten" (Pls.' Ex. F) — is comparable to the analysis employed by Delisi. Based on the evidence before the Court, the Court finds that the decline in the value of the R L stock owned by McFarland as a result of the subject misconduct was $327,600.
Based upon the evidence presented at the hearing and the evidence presented during the trial of this case on the issue of the decline in the value of McFarland's stock ownership in R L as a result of defendants' conduct, the Court finds McFarland is entitled to judgment in the amount of $327,600.
 Award of Attorney's Fees Pursuant to G. L. 1956 § 6-41-4
The plaintiffs submit that the evidence before the Court establishes a reasonable award of attorney's fees: 1917.8 hours at counsel's applicable hourly rate for the period involved, November of 1995 through June of 2001. Defendant Brier counters plaintiffs' asserted reasonableness of the application for fees with various contentions such as alleged duplication and lumping of billings; failure of counsel to give client's discount, a term of the fee arrangement between R L and its counsel, to defendant; and inappropriate or unnecessary allocation of time to collateral proceedings. Nevertheless, Brier admits that an award of fees is intended "to reimburse the Plaintiff for `actual' legal expenses incurred." Def. Factual Brief Discussing the Issues of Stock Diminution and Plaintiffs Request for Reasonable Legal Fees at 1.
In determining whether an attorney's fee is reasonable, the factors that a Court must consider are as follow:
 "1. the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 2. the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 3. the fee customarily charged in the locality for similar legal services;
 4. the amount involved and the results obtained;
 5. the time limitations imposed by the client or by the circumstances;
 6. the nature and length of the professional relationship with the client;
 7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and
 8. whether the fee is fixed or contingent." Article V, Rule 1.5 of the Supreme Court Rules of Professional Conduct.
An award of attorney's fees rests with the sound discretion of the trial justice. Rhode Island Insurers' Insolvency Fund v. Leviton Mfg. Co., Inc., 763 A.2d 590, 598 (R.I. 2000). A trial justice exercises discretion in determining "whether the proffered fees are reasonable and whether the . . . work performed was a necessary element in the proceeding." Schroff, Inc. v. Taylor-Peterson, 732 A.2d 719, 721 (R.I. 1999). However, a "reasonable attorney's fee" allowed by statute [42 U.S.C. § 1988] is not limited to the amount provided for in plaintiff's contingent fee agreement. Blanchard v. Bergeron, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67, 75 (1989). Moreover, "[w]hat a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the `reasonable attorney's fee' that a defendant must pay pursuant to a court order." Laverty v. Pearlman, 654 A.2d 696, 703 (R.I. 1995) (quoting Venegas v. Mitchell, 495 U.S. 82, 90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74, 84 (1990)).
Further, it is well-settled that attorneys "are competent to testify as experts in determining what is a reasonable charge for legal services rendered." Colonial Plumbing Heating Supply Co. v. Contemporary Construction Co., Inc., 464 A.2d 741, 744 (R.I. 1983) (citing Cottrell Employees Credit Union v. Pavelski, 106 R.I. 29, 35, 255 A.2d 162, 165 (1969)). Such expert testimony in the form of an affidavit has been found to be adequate. Id. (citing Stewart v. Industrial National Bank,458 A.2d 675 (R.I. 1983)). Nevertheless, to properly support an award of attorneys fees, such an affidavit must have documentation that is "`sufficient to satisfy the court, or indeed a client, that the hours expended were actual, nonduplicative and reasonable, . . . and to apprise the court of the nature of the activity and the claim on which the hours were spent.'" Pontarelli v. Stone, 781 F. Supp. 114, 120 (D.R.I. 1992) (quoting Ackerman v. Western Elec. Co., Inc., 643 F. Supp. 836, 862 (N.D.Cal. 1986), aff'd, 860 F.2d 1514 (9th Cir. 1988)).
The Court has reviewed the Affidavit of Counsel Regarding Attorney's Fees (Affidavit) which contains an accompanying spreadsheet (Spreadsheet) that summarizes the invoices attached thereto (Invoices). (Pls.' Ex. A.) The Spreadsheet itemizes counsel's hours by month from November, 1995 to the present, reflects adjustments to said hours by time subtracted from the proposed overall total, and indicates counsel's hourly rate with respect to the particular period recorded on each invoice. The Invoices contain detailed descriptions of each time entry. Based on his testimony and curriculum vitae, W. James McKay, Esquire (McKay) is qualified to provide expert testimony regarding the herein award of attorneys fees. Further, defendant Brier stipulated to McKay's qualifications to provide such expert testimony. Similarly, John Gyorgy (Gyorgy), plaintiffs' counsel called as a witness by Brier, qualified as an expert. To oppose the award of attorney's fees, Brier offered only the testimony of Gyorgy.
Based upon the record before this Court, including the expert's testimony and the documents admitted as full exhibits,[2] this, Court finds as follows.
McKay's testimony establishes the reasonableness of the time spent by plaintiffs' counsel and the reasonableness of the hourly rates of plaintiffs' counsel during the period from November of 1995 through June of 2001. With respect to time entries that relate to overlapping federal court litigation that R L's former president Bibeau had initiated, R 
L's counsel has made reasonable efforts to isolate and eliminate those time entries not pertinent to the instant matter. Said efforts are reflected in the reasonable adjustments described in paragraph 4 of the Affidavit as well as on the Spreadsheet. Specifically, R L's counsel eliminated from the subject request for fees the substantial bulk of time expended over the months during which the federal court case against Bibeau was actually tried. Furthermore, the time expended on the related proceedings filed by the defendants and by Bibeau, including the bankruptcy of Bibeau in 1997, the bankruptcy cases filed by Brier in 2000 and early 2001, the nondischargeability complaints filed by plaintiffs within those bankruptcy cases, and the fraudulent conveyance lawsuit filed against Brier and Rosemary Brier in 1997 ("related proceedings"), is directly/reasonably related to defendants' willful and malicious misconduct and, as such, were necessary to the plaintiffs' position in this litigation. The time spent by R L's counsel's prosecuting the appeal of the herein matter in the Supreme Court to a favorable outcome is directly/reasonably related to defendants' willful and malicious misconduct and, as such, is appropriately included in the application for fees. Additionally, the total of 1917.8 hours expended by counsel to R 
L from November of 1995 through June of 2001 is reasonable and includes those spent at earlier proceedings in this case when counsel was required to appear at multiple hearings in order to obtain injunctive relief against the defendants, as well as to pursue prejudgment remedies complicated by Brier's erroneous claims of title to real estate in Rhode Island. Based on McKay's testimony with respect to prevailing hourly rates for litigation involving the Uniform Trade Secrets Act and related claims and the other factors listed in Rule 1.5, the hourly rates set forth on the Spreadsheet are reasonable.
The Court notes that § 4 of the Uniform Trade Secrets Act, in pertinent part, allows an award of reasonable attorney's fees "if willful and malicious misappropriation exists," G.L. 1956 § 6-41-4, and does not limit the award to the trial court level. Accordingly, fees incurred in redressing such misconduct, including appellate counsel fees, are properly included in an award of attorney's fees. See Bond v. Polycycle, Inc., 127 Md. App. 365, 384-85, 732 A.2d 970, 979-80 (Md. App. 1999). Accordingly, R L's appellate counsel fees are properly included in this award under G.L. 1956 § 6-41-4. Similarly, the statutory remedy does not exclude an award for fees incurred for proceedings that are directly related to the willful and malicious misconduct. Accordingly, the time expended on the related proceedings is properly included in this award under G.L. 1956 § 6-41-4.
Arguing on the reasonableness of plaintiffs' request for fees, Brier contends that he ought to receive the benefit of discounts extended by plaintiffs' counsel to R L in the fee agreement letter for the early stages of this dispute. Additionally, he argues that "no charge" time should not be fully charged against him. Pursuant to § 6-41-4, it is within this Court's power to award attorney's fees in a trade misappropriation case. In awarding such fees, this Court may consider a fee agreement between an attorney and a client. However, in determining the reasonableness of an award of attorney's fees, the attorney's fee arrangement is only one of many factors to be considered. Blanchard, 489 U.S. at 93, 109 S.Ct. at 944. The Court recognizes that a fee agreement represents a plaintiff's and its counsel's "notion of what constitutes a reasonable fee." See Pharr v. Housing Authority of Prichard, 704 F.2d 1216, 1218 (11th Cir. 1983). Although the fee agreement between R L and its counsel, (Pls.' Ex. C), is not the only factor determinative of a reasonable fee award in this case, it merits consideration. The Court also notes, however, that a reasonable attorney's fee is not intended to be a windfall for the plaintiff but must nevertheless represent "reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing party, no more and no less." Blanchard, 489 U.S. at 93, 109 S.Ct. at 944. Accordingly, the Court declines Brier's request to be allowed benefit of what R L and its counsel considered as a reasonable agreement between themselves. See id. at 94, 109 S.Ct. at 945. (An award of reasonable fees is not barred where a lawyer agrees to take a case without compensation).
Based on the foregoing, particularly the detailed Affidavit which satisfies this Court that the hours expended by counsel were "actual, nonduplicative and reasonable," Pontarelli, 781 F. Supp. at 120, and the compelling testimony of plaintiffs' expert McKay, the Court awards attorney's fees to plaintiffs in the amount of $401,090, factored as 1917.8 hours at counsel's applicable hourly rate for the pertinent period.
 Conclusion
In summary, with respect to the diminution of the value of McFarland's stock, the Court awards $327,600 to McFarland. In addition, the Court awards attorney's fees to the plaintiffs in the amount of $401,090. Consistent with the Supreme Court's directive, this Court orders an award of compensatory damages in the amount of $151,380, exemplary damages in the amount of $302,760, and costs in the amount of $5,847.48. Finally, the defendants are jointly and severally liable for all damages.
Counsel shall submit the appropriate judgment for entry.
[1] Regarding the value of the stock at issue, the documents offered and admittd as full exhibits include (1) Tr. at 1070-71 (Pls.' Ex. E), (2) Tr. at 1102 (Pls.' Ex. F), (3) Tr. at 1058-1104 (Def. Ex. 1) and (4) Tr. at 1135-69 (Def. Ex. 2).
[2] During the hearing, the documents offered by the plaintiffs and admitted by the Court as full exhibits include (1) Affidavit of Counsel Regarding Attorneys Fees with attachments (Pls.' Ex. A), (2) Curriculum Vitae of W. James McKay, Esquire (Pls.' Ex. B), (3) Letter dated July 5, 1996 from John P. Gyorgy to Christopher F. McFarland, Jr. (Pls.' Ex. C), (4) List of Material Reviewed (Pls.' Ex. D).