**Melissa DAGOSTINO, Plaintiff,**

v.

**COMPUTER CREDIT, INC., Defendant.**

**No 15–cv–6752 (JFB) (ARL)**

United States District Court, E.D. New York.

Signed February 28, 2017

408

Craig B. Sanders and David M. Barshay
of Sanders Law, PLLC, 100 Garden City

Plaza, Suite 500, Garden City, New York 11530, and Todd D. Muhlstock of the Muhlstock Law Firm PC, 100 Garden City Plaza, Garden City, New York 11530, for Plaintiff.

Robert L. Dougherty of the Law Offices of Robert L. Dougherty, 226 Seventh Street, Suite 200, Garden City, New York 11530, for Defendant

## MEMORANDUM AND ORDER

Joseph F. Bianco, District Judge:

Plaintiff commenced this action on November 24, 2015, alleging various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"). (Compl., ECF No. 1.) On June 20, 2016, plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 18.) The following month, plaintiff filed an acceptance of Rule 68 Offer of Judgment. (ECF No. 19.)

Plaintiff subsequently filed a motion for attorneys' fees. (ECF No. 20.) On August 3, 2016, defendant filed its opposition to the motion. (ECF No. 25.) On August 4, 2016, plaintiff filed her reply. (ECF No. 26.) Defendant's opposition brief and plaintiff's reply brief each contain a request for sanctions against the opposing party's counsel. Further, in her reply brief, plaintiff requests fees for fifteen hours of legal work performed by plaintiff's counsel and $270.70 in costs incurred in connection with the preparation of the reply brief and accompanying declarations and exhibits.

For the reasons set forth below, the Court awards plaintiff $11,014.50 in attorneys' fees and $767.28 in costs, for a total of $11,781.78. The Court denies the parties' respective requests for sanctions.

### I. ATTORNEY'S FEES

■ "The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550,

130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). Under the FDCPA, however, "[a] consumer who brings a successful FDCPA lawsuit can recover 'the costs of the action, together with a reasonable attorney's fee as determined by the court.' " *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (quoting 15 U.S.C. § 1692k(a)(3)); *see also Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 209–10 (E.D.N.Y. 2009).

■ Generally, to determine reasonable attorneys' fees, a court must calculate a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar ... creates a 'presumptively reasonable fee.' " *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue* 559 U.S. at 542, 130 S.Ct. 1662). " '[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.' " *Perdue*, 559 U.S. at 553, 130 S.Ct. 1662 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551, 130 S.Ct. 1662. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v.*

*Kimso Apartments, LLC*, 852 F.Supp.2d 281, 298 (E.D.N.Y. 2012) (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933).

### A. Defendant's Opposition to Any Award of Attorneys' Fees

■ Defendant argues that plaintiff's request for attorneys' fees should be denied in its entirety based on the following grounds: (1) the timesheet submitted with the Barclay Declaration (the "final timesheet") (ECF No. 23, Ex. 1) appears to contain inaccuracies, (2) plaintiff made misrepresentations in the course of the litigation, and (3) plaintiff's counsel directly emailed defendant after being warned not to do so. (Decl. of Robert L. Dougherty dated August 3, 2016 ("Dougherty Decl."), ECF No. 25 ¶ 27.)[1]

Turning first to defendant's contentions concerning the accuracy of the timesheet, the Court finds that certain adjustments are warranted in light of defendant's specific contentions. Those adjustments are outlined below. However, once these adjustments are made, no further remedy—much less denying attorneys' fees in their entirety—is necessary. *See, e.g., New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1141–42 (2d Cir. 1983) (upholding calculation of hours where district court "concluded that the application for fees was inaccurate in some respects … [and] therefore, disallowed a significant number of the hours claimed by the plaintiffs").

The Court also rejects defendant's argument that fees are not warranted because plaintiff allegedly made certain misrepresentations in the course of the litigation.

First, defendant asserts that plaintiff testified at her deposition initially that she was an attorney and then later denied that she was an attorney. (Dougherty Decl. ¶ 27.) Plaintiff denies this allegation in a Declaration dated August 3, 2016 ("Pl.'s Decl."). (ECF No. 27.) Specifically, plaintiff states that she is an attorney (Pl.'s Decl. ¶ 2), and that defendant's allegation was based on an error contained in the transcript of her deposition (*id.* ¶¶ 10–14). Having considered the parties' arguments, the Court concludes that whether plaintiff stated that she was not an attorney is immaterial to whether her counsel should be awarded attorneys' fees. Thus, the Court rejects defendant's argument that this unresolved factual issue should lead the Court to deny plaintiff's request for attorneys' fees.

The second misrepresentation by plaintiff that defendant alleges is that she stated in her initial complaint that she received an October 5, 2015 letter that she later denied receiving. (Pl.'s Decl. ¶ 27.) Defendant failed to indicate to the Court where in the record these inconsistencies appear. Upon the Court's review of the complaint, the amended complaint, and the exhibits attached to the Dougherty Declaration, the Court has found no support for defendant's allegation that she made inconsistent statements regarding having received an October 5, 2015 letter. In plaintiff's complaint, she states that she received the October 5, 2015 letter on October 8, 2015. (ECF No. 1 ¶ 29.) The amended complaint does not state that she received the letter, but it also does not state that she *did not* receive the letter. (*See* ECF No. 18.) In fact, the amended complaint acknowledges that defendant

---

1. In Barshay's reply declaration ("Barshay Repl. Decl."), he notes that defendant's opposition contains both legal arguments and factual statements in violation of Local Rules 7.1(b), 7.1(a)(2), and 7.1(a)(3), and, therefore, should be disregarded. (ECF No. 26 ¶ 3). The Court does not believe the failure to separate out the legal arguments prejudiced plaintiff in any way and, in its discretion, declines to disregard defendant's opposition papers on this basis.

contacted her by letter dated October 5, 2015. (*Id.* ¶ 13.) Thus, the Court has no basis to find that plaintiff made this misrepresentation, and, in any case, determines that it is immaterial to whether her counsel should be awarded attorneys' fees. Accordingly, the Court rejects defendant's objection to plaintiff's request for attorney's fees on this ground.[2]

Defendant's last argument as to why the Court should deny plaintiff's request for attorneys' fees in its entirety is that plaintiff's counsel directly emailed defendant after being warned not to do so. (Dougherty Decl. ¶ 27.) Plaintiff's counsel states that the emails at issue were his responses to defendant's own emails that copied individuals employed by defendant. (Barshay Repl. Decl. ¶¶ 6–8.) Plaintiff's counsel claims that he had no reason to believe these individuals were employed by defendant. (*Id.* ¶¶ 6–7.) Having considered the parties' arguments, the Court concludes that there is an insufficient basis to conclude that plaintiff's counsel intentionally contacted defendant and, in any event, that this is not a sufficient basis to deny attorneys' fees. Thus, the Court rejects defendant's argument that this issue should lead the Court to deny plaintiff's request for attorneys' fees.

Having thus rejected each of defendant's arguments as to why the Court should reject plaintiff's request for attorneys' fees in its entirety, the Court now determines the reasonable hourly rates of plaintiff's counsel and the number of hours for which plaintiff's counsel should reasonably be compensated.

### B. Reasonable Hourly Rates

 "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. The Second Circuit's " 'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.' " *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). The Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). *See Arbor Hill*, 522 F.3d at 190. The twelve *Johnson* factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717–19). Finally, a district court should

---

**2.** In her declaration, plaintiff requests that the Court strike defendant's opposition papers in light of defendant's reliance on and use of the transcript she asserts to contain an error. (Pl.'s Decl. ¶ 15.) Having determined that whether the transcript on which defendant relies is accurate is an immaterial, unresolved factual issue that does not affect the Court's decision, the Court declines to strike defendant's opposition.

also consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190. "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and a plaintiff's attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee*, 852 F.Supp.2d at 298.

"Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK)(WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015); *see also Sass v. MTA Bus Co.*, 6 F.Supp.3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." (citations omitted)). Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse. v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012).

Plaintiff requests a billing rate of between $350.00 and $575.00 for the two attorneys for whom it seeks attorneys' fees, David M. Barshay ("Barshay") and Craig B. Sanders ("Sanders"). (Decl. of David M. Barshay dated July 28, 2016 ("Barshay Decl."), ECF No. 23 at 5.) Defendant claims this rate is "excessive for work performed by an attorney with plaintiff's counsel's experience under the [FDCPA]." (Dougherty Decl. ¶ 4.)

### 1. David M. Barshay

David Barshay received his Juris Doctorate from Benjamin N. Cardozo School of Law in 1999. (Barshay Decl. ¶ 20.) He has been admitted to practice law in New York since 2000. (*Id.*) Barshay was a founding member of three law firms, Barshay Sanders, PLLC (Barshay Decl. ¶ 1), Bakers Sanders, LLC, and Barshay & Rizzo, PLLC (*id.* ¶ 20). He has tried hundreds of cases to verdict, taught a course on trial techniques for the New York State Bar Association, and served as a correspondent for the New York Law Journal since 2007. (*Id.*) Barshay has experience in litigating under the FDCPA. (*Id.* ¶ 22.) His typical billing rate to paying clients is between $450.00 and $600.00. (*Id.* ¶ 20.)

In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill*, the Court concludes that $350.00 per hour is a reasonable hourly rate for Barshay. The Court arrives at this conclusion in light of Barshay's extensive trial experience, his experience with the FDCPA, and his role as a founding member of Barshay Sanders, PLLC. The Court has considered plaintiff's assertion that the instant case was not a "run-of-the-mill" FDCPA case. (Barshay Decl. ¶ 25.) In support of that assertion, plaintiff stated that the case involved a complaint, amended complaint, discovery, plaintiff's deposition, two pre-motion conferences, and "endless correspondence" between the parties. However, the Court concludes that the case did not present any novel or difficult questions of law and did not require a high level of skill. As such, the Court deter-

mines that the lower end of plaintiff's request, and not a higher amount, is a reasonable hourly rate for this case. Other courts have found similar hourly rates to be reasonable in similar cases. *See Larsen v. JBC Legal Group, P.C.*, 588 F.Supp.2d 360, 364 (finding in an FDCPA case that $300.00 was a reasonable hourly rate for an attorney with seventeen years of experience, including "significant experience in consumer protection and consumer fraud litigation"); *Baruch v. Healthcare Receivable Management, Inc.*, 2007 WL 3232090 at *5 (E.D.N.Y. Oct. 30, 2007) (finding in an FDCPA case that $350.00 was a reasonable hourly rate for an attorney who had practiced law for nineteen years).

### 2. Craig Sanders

Craig Sanders received his Juris Doctorate from the University of Pennsylvania Law School in 1993. (Barshay Decl. ¶ 21.) He has been admitted to practice law in New York since 1994. (*Id.*) Sanders has personally argued a number of appeals and has served as trial counsel on a number of matters. (*Id.*) He has experience in litigating under the FDCPA. (*Id.* ¶ 22.)

In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill*, the Court concludes that $350.00 per hour is also a reasonable hourly rate for Sanders. The Court reaches this conclusion in light of Sanders' extensive legal career, his focus on federal litigation, and his role as a founding member of Barshay Sanders, PLLC. For the reasons stated above, the Court finds that the issues in this case do not warrant a higher hourly rate.

### C. Reasonable Hours

▮ "The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No.

06-CV-7148 (GBD), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.' " *Id.* (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *N.Y. Ass'n for Retarded Children, Inc.*, 711 F.2d at 1146); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). For example, in *Matusick v. Erie County Water Authority*, the Second Circuit upheld a district court's 50 percent across-the-board reduction of hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." 757 F.3d 31, 64 (2d Cir. 2014) (citation omitted); *see also Francois v. Mazer*, 523 Fed.Appx. 28, 29 (2d Cir. 2013) (upholding 40 percent across-the-board reduction in hours); *Green v. City of New York*, 403 Fed.Appx. 626, 630 (2d Cir. 2010) (upholding 15 percent across-the-board reduction); *Kirsch*, 148 F.3d at 173 (upholding "20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records").

▮ The Second Circuit has said that calculating reasonable hours expended is "best made by the district court on the basis of its own assessment of what is

appropriate for the scope and complexity of the particular litigation." *Carey,* 711 F.2d at 1146; *see also Lore v. City of Syracuse,* 670 F.3d 127, 175 (2d Cir. 2012) (holding that "the district court, which is intimately familiar with the nuances of the case," is in the best position to determine an appropriate fees award). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235–36 (2d Cir. 1985)).

Plaintiff initially requested compensation for 35.9 hours of legal work. (Barshay Decl. 5.) These hours encompass plaintiff's counsel's work in connection with the complaint and amended complaint, discovery, plaintiff's deposition, two pre-motion conferences, and correspondence between the parties. (*Id.* ¶ 25.) Defendant opposes this request, describing it to be "grossly excessive." (Dougherty Decl. ¶ 4.) Plaintiff also requested fees for fifteen hours of legal work performed by plaintiff's counsel in connection with the preparation of the reply brief.

### 1. Work Performed by Todd Muhstock

■ As a threshold matter, the Court denies plaintiff's request for compensation for 1.2 hours of work done by attorney Todd Muhlstock ("Muhlstock") on June 10, 2016. (*See* Barshay Decl. Ex. 1 at 5.) Defendant claims this request was unreasonable because Muhlstock, along with Sanders, "had no involvement in this case whatsoever insofar as any contact with [his] office," and appears to find the

amount of time excessive considering the work performed. (Dougherty Decl. ¶ 20.) The Court does not agree with defendant that the request should be denied because Muhlstock did not have any contact with defendant's counsel in the course of the instant case. (*See* Barshay Repl. Decl. ¶ 10.) [3] Further, 1.2 hours of work is not an unreasonable amount of time to spend on the work performed—meeting with Barshay to discuss the case and filing a notice of appearance. However, plaintiff does not provide any information as to Muhlstock's education or experience, which renders the Court unable to determine what his reasonable hourly rate would be. Further, given the Court's ability to exclude hours that are redundant or otherwise unnecessary, *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933, the Court concludes that Muhlstock's meeting with Barshay and preparation and filing of notice of appearance were duplicative and also unnecessary, given the fact that there is no indication that Muhlstock participated in any other way in the representation of plaintiff in the instant case. The Court accordingly reduces plaintiff's initial request by 1.2 hours (*i.e.,* from 35.9 hours to 34.7 hours).

### 2. Additional Hours Reflected in Final Timesheet

■ The Court finds additional reductions are warranted in light of certain issues raised by defendant. Specifically, defendant argues that the final timesheet contained a false entry on May 20, 2016 because it stated plaintiff's counsel traveled to a pre-motion conference to the Court that was actually conducted by telephone, and, in any case, was not attended by Barshay (Dougherty Decl. ¶ 21); and

---

**3.** The Court likewise concludes this is no basis to deny fees requested for work performed by Sanders.

that there were inexplicable incongruences between the final timesheet and an earlier draft of the timesheet plaintiff had produced to defendant (the "draft timesheet") (*id.* ¶¶ 22–23). Defendant submitted the draft timesheet to the Court as Exhibit I to his opposition. (ECF No. 25–1 at 62.)

In response to defendant's arguments, in plaintiff's reply memorandum of law ("Pl.'s Repl. Br."), plaintiff argues the draft timesheet was furnished to defendant in order to facilitate settlement of the attorneys' fees issue. (ECF No. 28 at 1.) As such, plaintiff argues, defendant violated Rule 408 of the Federal Rules of Evidence ("Rule 408") by submitting it to the Court, and the Court should sanction him for doing so. (*Id.* at 1–2.) The Court disagrees.

Rule 408 prohibits evidence of alleged settlement negotiations from being offered to prove either "validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. However, "[c]ourts have differed over whether or to what extent the Federal Rules of Evidence govern disputes over attorneys' fees," and the Second Circuit has not decided the question. *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 352 (2d Cir. 2009). Although the protection offered by Rule 408 "is a matter of fundamental policy," *id.* draft timesheets such as the draft timesheet at issue here are not presented as offers to compromise, but rather are presented as statements of fact, *see Harty v. Bull's Head Realty*, 2015 WL 1064630 at *5 (D. Conn. Mar. 11, 2015); *EMI Catalogue Partnership v. CBS/Fox Co.*, No. 86 Civ. 1149 (PKL), 1996 WL 280813 at *2 (S.D.N.Y. May 24, 1996) ("[Here, evidence] is being offered to show that the Court's rejection of the claim should not merit an award of attorney's fees under the Court's power of equitable discretion . . . ."); *see also Master–Halco, Inc. v. Scillia, Dowl-*

*ing & Natarelli, LLC*, 739 F.Supp.2d 125, 133 (2d Cir. 2010) ("[W]hen settlement-related evidence is related to a claim not under consideration by the jury, courts generally permit its introduction [notwithstanding Rule 408], so long as it is otherwise admissible, if it is relevant to a claim that is at issue." (citations omitted)). Thus, the Court considers the draft timesheet in assessing the reasonableness of the hours for which plaintiff seeks compensation.

Plaintiff's counsel also addressed defendant's claims by making a general statement that the timesheet he submitted to the Court was accurate. (Barshay Repl. Decl. ¶ 9.) He further states that the draft timesheet was provided "with the express caveat that it was not a complete and final product." (*Id.* ¶ 13.) With respect to defendant's claim concerning the May 20, 2016 entry in particular, plaintiff's counsel argues that the entry does not reference his travel to the pre-motion conference, but simply his preparation for the conference. (*Id.* ¶ 11.) However, plaintiff's counsel did not address why the *draft* timesheet entry for this date reflected travel to the Court; he only states that it was an error that "was recognized and corrected prior to the finalization of the time records submitted to the court." (*Id.* ¶ 11 n.5.)

Plaintiff's counsel does not specifically address the numerous other discrepancies between the draft timesheet and the final timesheet. Those discrepancies lead the total amount of hours reflected in the final timesheet to be 5.7 hours greater than the total amount reflected in the draft timesheet. (*Compare* draft timesheet at 3 (claiming a total of 30.2 hours of work), *with* final timesheet at 1 (claiming a total of 35.9 hours of work).) Plaintiff's counsel failed to provide a sufficient explanation for these discrepancies, especially given the additional 5.7 hours amounts to a nearly twenty percent increase in the amount

of time for which plaintiff's counsel seeks compensation. The Court has reviewed the parties' motion papers, the draft time-sheet, and the final timesheet in an effort to understand why these discrepancies exist, and has found none.[4] Even accepting plaintiff's counsel's attestation that each entry in the final timesheet is accurate, at best, the existence of these discrepancies undermines any argument that records of the conflicting entries were kept contemporaneously, as required in this circuit. *Kirsch*, 148 F.3d at 173. Thus, the Court further reduces the requested hours by these 5.7 additional hours (*i.e.*, from the 34.7 hours calculated after deducting Muhlstock's work, thus equaling 29 hours).[5] Similarly, the Court, finding no explanation for the error contained in the draft timesheet for the May 20, 2016 entry and, accordingly, determining that the May 20, 2016 entry in the final timesheet was not made contemporaneously, further reduces the requested hours by the 0.8

hours attributed to that entry (*i.e.*, from 29 hours as calculated above to 28.2 hours).

### 3. Reduction for Remaining Hours Initially Requested by Plaintiff

■ Setting these specific entries aside, the Court determines that the remaining hours contained in the final timesheet should be reduced by fifteen percent because of several other issues with the billing records and because the time billed reflects work done on the initial complaint, which was ultimately unsuccessful.

■ First, turning to the other issues with the billing records, the Court has discretion to reduce attorneys' fees where billing records contain vague entries, block entries, claims for excessive amounts of time, and other issues. *See, e.g., Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F.Supp.2d 307, 314 (S.D.N.Y. 2009) ("Because the time records here contain some vague entries and block entries that prevent the Court from determining whether

---

4. Defendant noted that plaintiff's counsel stated when forwarding the draft timesheet to defendant that it did not take emails into account. (Dougherty Decl. ¶ 23 n.3.) Defendant states that assuming the increase in total hours was attributable to the addition of time spent on emails is "complete nonsense." (*Id.*) The Court agrees that the increase appears high for the instant action, again in light of the fact that the total hours reflected in the final timesheet was only 35.9 hours. Further, the draft timesheet itself contained many references to emails and other correspondence, which raises the question of why some emails and other correspondence were included in the draft timesheet and 5.7 hours' worth of other emails and correspondence were not. For these reasons, the Court does not find plaintiff's counsel's explanation to defendant that the draft timesheet did not contain email correspondence to be sufficient to explain the large discrepancy between the two time-sheets.

5. Defendant also takes issue with two entries, both dated May 11, 2016, that dealt with Barshay's and Sanders' respective work performed in connection with the letter defen-

dant submitted requesting a pre-motion conference with the Court. (*See* Dougherty Decl. ¶ 22.) In particular, defendant argues that the entries, which total 3.4 hours, are unreasonable because plaintiff did not respond to defendant's letter either through an opposition letter to the Court prior to the pre-motion conference or orally at the pre-motion conference itself. (*Id.*) Plaintiff's counsel argues that the work plaintiff's counsel performed was necessary because defendant's letter was "factually dense and included the direct citation to cases totaling more than fifty (50) pages," all of which plaintiff's counsel read. (Barshay Repl. Decl. ¶ 12.) Although the Court subjects this time to the fifteen-percent reduction discussed below, it does not find that the fact that plaintiff's research and other work performed in connection with defendant's letter did not result in plaintiff's opposition to the letter to mean that the work was unreasonable. Instead, the Court determines the fifteen-percent reduction is sufficient to avoid awarding fees for any unnecessary or excessive work.

the time expended was reasonable ... the Court will deduct a reasonable percentage of the number of hours claimed—in this case fifteen percent ...." (internal citation omitted)); *Spalluto v. Trump Int'l Hotel & Tower*, No. 04-CV-7497 (RJS)(HBP), 2008 WL 4525372, at *8–9 (S.D.N.Y. Oct. 2, 2008) (applying fifteen percent reduction for substantial use of block-billing and vague time entries); *Molefi v. Oppenheimer Trust*, No. 03-CV-5631 (FB)(VVP), 2007 WL 538547, at *7–8 (E.D.N.Y. Feb. 15, 2007) (applying fifteen percent reduction for, *inter alia*, a "substantial amount" of block-billing); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 277 F.Supp.2d 323, 325–26 (S.D.N.Y. 2003) (applying fifteen percent reduction for block-billing and excessive time entries).

Here, the amount of time entered by plaintiff's counsel relating to scheduling and other administrative work is excessive. For example, several entries consist of Sanders simply reviewing bounces on the electronic court filing system. Moreover, plaintiff requests 2.2 hours for an entry attributed to both Barshay and Sanders on November 24, 2015. A single entry attributed to multiple attorneys undermines the Court's ability to determine which attorney performed the various tasks included in the entry and whether the work they performed was duplicative.[6] *Kirsch*, 148 F.3d at 173 ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, *for each attorney*, the date, the hours expended, and the nature of the work done." (emphasis added)). Further, there are several instances of block-billing, such as the entry of 4.8 hours by Barshay on June 10, 2016 that includes several distinct items.

In light of these issues, a fifteen-percent reduction in the remaining hours requested is appropriate.

The Court also finds a reduction of hours is appropriate because the initial complaint was unsuccessful. Generally, attorneys' fees are not awarded for work performed in connection with unsuccessful claims unless those claims are related in fact or legal theory. *See Kirsch*, 148 F.3d at 173 ("The district court properly ruled that the two claims were unrelated in fact or legal theory and that fees should not be awarded for pursuit of the failed labor law claim."). Here, there are important differences between the factual allegations contained in the initial complaint and those contained in the amended complaint. Most importantly, the initial complaint does not contain any factual allegations pertaining to a telephone conversation between plaintiff and defendant, while the amended complaint does. (ECF No. 18 ¶¶ 16–25). However, the Court declines to adopt defendant's position that no fees should be awarded in connection with the work performed by plaintiff's counsel on the initial complaint. (*See* Dougherty Decl. ¶ 17.) Notwithstanding the existence of notable differences in the factual allegations between the two complaints, there are substantial factual and legal similarities. For example, facts such as the underlying debt at issue and defendant's letter communications to plaintiff are identical in both pleadings. (*Compare* Compl. ¶¶ 10–15, *with* Am. Compl. ¶¶ 10–15.) Further, there is an overlap between some of the FDCPA provisions at issue in the respective complaints (*i.e.*, 15 U.S.C. §§ 1692e, 1692f). (*Compare* Compl. ¶¶ 16–67, *with* Am. Compl. ¶ 70.) Therefore, a reduction in the

---

6. Moreover, although the Court is awarding the same hourly rate to the attorneys in this action, the practical difficulties that would arise from accepting an entry attributed to multiple attorneys in cases in which the attorneys received different hourly rates counsels against finding such an entry permissible.

total number of hours sought, rather than a categorical denial of all hours sought in connection the initial complaint, is warranted.

For these reasons, the Court determines a fifteen-percent reduction in the hours sought (after reducing the total amount sought by the 1.2 hours of work performed by Muhlstock, the increase of 5.7 hours between the draft timesheet and final timesheet, and 0.8 hours for the May 20, 2016 entry) is appropriate. Therefore, the Court applies a fifteen-percent reduction to 28.2 hours for a total amount of 23.97 hours.

4. Hours Requested for Work Performed in Connection with Reply Brief and Accompanying Materials

In plaintiff's reply brief, she requests an additional fifteen hours in attorneys' fees performed by Barshay in connection with preparing plaintiff's reply brief and accompanying declarations and exhibits. (Repl. Br. 4; *see also* Barshay Repl. Decl. ¶ 14.) For the reasons that follow, the Court applies a fifty-percent reduction to this request, and awards plaintiff fees for an additional 7.5 hours of work.

■ As a threshold matter, "attorneys' fees for the preparation of [ ] fee application[s] are compensable," as are fees for the time incurred in litigating them.[7] *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183–84 (2d Cir. 1996) (citing *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979)). However, "[i]f the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." *Gagne*, 594 F.2d at 344.

■ Here, plaintiff's request of fifteen hours for work performed in connection with the reply brief is unnecessarily high. For example, plaintiff's request includes reviewing plaintiff's complete deposition transcript with counsel (rather than focusing on the portions of the transcript at issue in defendant's opposition). (*See* Barshay Repl. Decl. ¶ 14.) In addition, it was unnecessary to have the plaintiff's declaration articulate the similarities and differences between the claims in the litigation when such an analysis can be done by reviewing the pleadings themselves. The Court also finds relevant that plaintiff's request would amount to the Court increasing plaintiff's award by approximately fifty percent of the award initially sought. The purpose behind statutory fee authorizations like that at issue here—"the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies," *Reed*, 95 F.3d at 1184—is not furthered by awarding such unnecessarily high requests. Further, although plaintiff's counsel listed the nature of the fifteen hours of work performed, he did not explain how many hours of work were performed on which tasks, resulting in a block entry warranting reduction. *See, e.g., Miroglio S.P.A.*, 629 F.Supp.2d at 314. Thus, the Court awards plaintiff fees for an additional 7.5 hours of work performed in connection with the reply brief and accompanying declarations and exhibits.

Accordingly, plaintiff's counsel is awarded fees for 31.47 hours of work (*i.e.*, 23.97 hours for work performed in connection with the underlying claim and 7.5 hours for work performed in connection with the application for attorneys' fees). At the rate of $350.00 applicable for both attorneys in

---

7. The Court notes that, although plaintiff was entitled to seek compensation for the work performed in connection with the initial mo-tion for attorneys' fees, plaintiff did not request such compensation.

the case, this amounts to $11,014.50 in fees.

### D. Costs

In her motion for attorneys' fees and costs, plaintiff requests $496.58 in costs. (Barshay Decl. ¶ 27.) Subsequently, in her reply brief, plaintiff requests an additional $270.70 for costs incurred in connection with the preparation of the reply brief.

 "As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013) (same). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

 As a threshold matter, defendant does not object to an award of the $496.58 in costs initially sought by plaintiff. (Dougherty Decl. ¶ 4.) In any event, the Court has independently reviewed these costs and examined Exhibit 2 to the Barshay Declaration, which explains the costs

requested consist of: (1) a $400.00 filing fee, (2) a $95.00 service of process fee, and (3) a $1.58 postage fee (Barshay Decl. Ex. 2.) Having reviewed the Barshay Declaration and the accompanying bill for costs, the Court determines these to be reasonable out-of-pocket expenses.

Turning to the additional costs sought by plaintiff in her reply brief, the Court likewise determines them to be reasonable out-of-pocket expenses. The amount sought was paid by plaintiff to obtain a copy of plaintiff's deposition transcript, which was used by defendant in its opposition brief. (*See* Barshay Repl. Decl., Ex. 4, ECF No. 26-4.) The Court finds this expense was reasonable, especially because defendant argued that inconsistencies appearing in the transcript should cause the Court to deny plaintiff's request for fees in its entirety.

Accordingly, the Court awards plaintiff $767.28 in costs, comprised of the $496.58 originally requested by plaintiff and uncontested by defendant, and the $270.70 requested by plaintiff in her reply brief.

### II. SANCTIONS

As noted above, defendant's opposition brief and plaintiff's reply brief each contain a request for sanctions against the opposing party's counsel. As a threshold matter, because neither party has formally moved for sanctions, the requests are not properly before the Court. *See* Fed. R. Civ. Pro. 11(c)(2) ("A motion for sanctions must be made separately from any other motion . . . ."). In any event, the Court has considered the parties' respective arguments and denies the requests.

 Federal Rule of Civil Procedure 11 provides, *inter alia*, that, by submitting a signed pleading, motion, or other paper to the Court, a party or attorney "[is] certif[ying] that to the best of the person's knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances ... it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). To avoid the risk of sanctions under Rule 11, a party's counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F.Supp.2d 294, 307 (S.D.N.Y. 2005) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

 In considering a motion for sanctions under Rule 11, this Court applies an "objective standard of reasonableness." *See MacDraw v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996) ("In evaluating whether the signer of a filing has violated Rule 11, the district court applies an objective standard of reasonableness, examining whether, under the circumstances of a given case, the signer has conducted a 'reasonable inquiry' into the basis of a filing."). "[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986). Additionally, "[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, ... courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

### A. Sanctions Against Defendant's Counsel

 In plaintiff's declaration, she requests the Court sanction defendant and its counsel "for their careless, outrageous and slanderous conduct" in connection with its allegations that plaintiff made misrepresentations in the course of the instant litigation. (Pl.'s Decl. ¶ 16; Barshay Repl. Decl. ¶ 16.) Plaintiff also requests sanctions due to defendant's alleged violation of Rule 408. (Pl.'s Repl. Br. 2.)

As discussed above, the Court concludes that defendant did not violate Rule 408 by providing the Court with the draft timesheet. Accordingly, plaintiff's request for sanctions on this ground is denied. Further, although defendant's allegations regarding misrepresentations made by plaintiff did not affect the Court's determination of the request for attorneys' fees, that is not enough to justify sanctions under Rule 11. Even accepting plaintiff's argument that the transcript used by defendant contained an error, which is an unresolved factual issue, the Court does not find defendant's reliance on it (and failure to confirm its accuracy with plaintiff) to be the type of conduct that warrants sanctions under the circumstances of this case.

Likewise, defendant's arguments pertaining to plaintiff's alleged abandonment of the claims contained in the initial complaint, although not adopted by the Court in their entirety, did affect the Court's determination of reasonable hours. Thus, they were not frivolous, and sanctions are not warranted against defendant for employing them. *See, e.g., Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 (NGG), 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there

is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90 CIV. 8280 (JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak."). Thus, plaintiff's request for sanctions on this ground is also denied.

**B. Sanctions Against Plaintiff's Counsel**

 Defendant argues that, in light of the discrepancies between the draft timesheet and final timesheet, plaintiff's counsel should be sanctioned. (Dougherty Decl. ¶ 23.) The Court disagrees. Although the Court determined that the failure to adequately explain such discrepancies and to demonstrate that the new entries were contemporaneous records warranted a denial of the fees for the additional time requested, that is not enough to justify sanctions under Rule 11. As a threshold matter, plaintiff's counsel did not submit the draft timesheet to the Court, and indicated to opposing counsel that it was a draft. Thus, there is no basis for sanctions in connection with the draft timesheet. *See* Fed. R. Civ. Pro. 11(b)(3). Moreover, the Court has not concluded that the revised entries in the final timesheet were submitted in bad faith, or were misleading or inaccurate; rather, as noted above, the Court simply concluded that there were inadequate explanations for the discrepancies, and a failure to demonstrate that the new entries were contemporaneously kept. However, those deficiencies are not sanctionable in the instant case, and the Court does not find any basis for sanctions against plaintiff's counsel arising from his submissions. Accordingly, the Court denies defendant's request for sanctions against plaintiff's counsel.

**III. CONCLUSION**

For the foregoing reasons, the Court awards plaintiff $11,014.58 in attorneys' fees and $767.28 in costs, for a total of $11,781.78. The Court denies the parties' respective requests for sanctions.

SO ORDERED.